UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-80089-Middlebrooks/Matthewman

UNITED STATES OF AMERICA

v.

CHARLES LAWRENCE BAUGH, SR.,

Defendant.
_____/

FILED BY SW D.C.
Jul 8, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## FACTUAL PROFFER

The Defendant, CHARLES LAWRENCE BAUGH, SR. (the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

*Background*

1. The Defendant was a resident of Boca Raton, Florida, in the Southern District of Florida.

2. The Defendant maintained numerous accounts in his name at Charles Schwab, including an Individual Retirement Account (IRA) ending in 1752 and a brokerage account ending in 1947.

3. Family Member-1 was a family member of the Defendant who, since before 2019, worked as a senior employee at ADT Inc. ("ADT"), a security company headquartered in Boca Raton, Florida. The Defendant and Family Member-1 had a history of sharing business confidences that were generally maintained.

4. Family Member-2 was a family member of the defendant who maintained an IRA

ending in 2136 and a Roth IRA Conversion account ending in 5804, both at Charles Schwab.

5.  Family Member-3 was a family member of the defendant who maintained a brokerage account ending in 6579 and an IRA ending in 3984, both at Fidelity.

6.  ADT's shares were publicly traded on the Nasdaq stock exchange under the ticker ADT.

7.  Google LLC ("Google") is and was a technology company headquartered in Mountain View, California.

### *ADT & Google's Partnership*

8.  As of early 2020, ADT and Google were in discussions concerning a potential partnership, including an equity investment by Google into ADT.

9.  On approximately February 25, 2020, ADT and Google executed a non-disclosure agreement concerning the proposed partnership and investment.

10. In approximately July 2020, Google's board of directors reviewed a proposed agreement memorializing the partnership and investment. The agreement was finalized on approximately July 31, 2020.

11. On August 3, 2020, at approximately 6:00 a.m. Eastern Time, prior to the opening of the Nasdaq stock exchange, ADT and Google announced the partnership and investment. Specifically, the companies announced, *inter alia*, that they were entering into a long-term partnership agreement "to create the next generation of smart security home offerings" and that Google was investing approximately $450 million into ADT to acquire a 6.6% ownership stake.

12. In response to the news, ADT's share price increased over 50%, from approximately $7.77 at the close of trading on July 31 (the last trading day before the announcement) to approximately $12.17 at the close of trading on August 3.

### *The Defendant Learns of the ADT-Google Partnership*

13.     Family Member-1 learned of the negotiations between ADT and Google in approximately May 2020, when he was asked to sign a non-disclosure agreement.

14.     On or about July 4, 2020, at a family gathering, Family Member-1 revealed to the Defendant that Google was exploring partnering with, and investing in, ADT.

15.     Because of their close family relationship and history of sharing personal confidences, Family Member-1 had an expectation of trust and confidence that the information he shared with the Defendant about Google's interest in partnering with and investing in ADT would be kept confidential.

16.     Given Family Member-1's senior role at ADT, the Defendant knew that the information regarding the potential partnership between ADT and Google, including Google's investment in ADT, was material, non-public information ("MNPI") that the Defendant had a duty to keep confidential.

### *The Defendant Trades on the MNPI*

17.     Despite knowing that the information was material and non-public, the Defendant traded in ADT securities based on the MNPI. The Defendant traded in his accounts and led close family members to trade in their accounts. In total, the Defendant and those around him executed trades on the misappropriated MNPI causing a gain of more than $424,704.

18.     On approximately July 6, 2020, the first trading day after the July 4th holiday, the Defendant purchased approximately 650 ADT call options in his accounts ending in 1752 and 1947. Specifically, the Defendant purchased (i) 100 call options with a strike price of $12.50 expiring August 21, 2020; (ii) 50 call options with a strike price of $7.50 expiring August 21, 2020; (iii) 100 call options with a strike price of $12.50 expiring November 20, 2020; and (iv) 400 call options with a strike price of $15.00 expiring November 20, 2020. At the time, ADT's share price was trading at

approximately $7.02. The Defendant purchased the call options based on the MNPI he learned from Family Member-1. The Defendant had not previously purchased ADT securities.

19. The very next day, July 7, 2020, the Defendant purchased 150 more call options.

20. Beginning on approximately July 15, 2020, based on the Defendant's suggestion, Family Member-2 purchased ADT call options. Specifically, on July 15, Family Member-2 purchased 10 call options with a strike price of $10 expiring October 16, 2020; on July 16, Family Member-2 purchased 20 call options with a strike price of $11.80 expiring January 15, 2021, and 10 call options with a strike price of $10 expiring October 16, 2020. The Defendant did not reveal to Family Member-2 the MNPI that prompted the Defendant's recommendation; the Defendant did, however, follow-up with Family Member-2 to ensure that Family Member-2 had in fact invested in ADT. Family Member-2 had never previously traded in ADT securities.

21. Family Member-2 continued to purchase ADT securities on July 22, 23, and 29, 2020.

22. On approximately July 17, 2020, Family Member-3 began trading in ADT securities based on the Defendant's recommendation. Specifically, Family Member-3 purchased approximately 35 call options with a strike price of $9.30 expiring January 15, 2021. Over the next two weeks, Family Member-3 purchased additional call options.

23. Between July 21 and 27, 2020, the Defendant purchased an additional 200 ADT call options and approximately 800 ADT shares.

24. The Defendant sold all 1,000 ADT call options on August 3, 2020, realizing a profit of approximately $314,984. The Defendant retained ownership over the 800 ADT shares. As of close of trading on August 3, 2020, the Defendant's gain on the shares was approximately $3,342.

25. Family Member-2 sold the majority of his ADT call options immediately after the announcement. He sold his final ADT call option by the end of August. He realized a profit of

approximately $74,180.

26.  Family Member-3 sold all of his ADT call options between approximately August 3 and 5. He realized a profit of approximately $32,199.

27.  In addition to the trading described above, the Defendant purchased ADT securities based on MNPI in the accounts of two additional family members.

The parties agree that these facts, which do not include all facts known to the United States and the Defendant, are sufficient to prove to the sole count of the Information.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 7/8/25

ELI S. RUBIN
ASSISTANT U.S. ATTORNEY

Date: 5/22/25

JEFFREY L. COX, ESQ.
JAMES D. SALLAH, ESQ.
ATTORNEY FOR DEFENDANT

Date: 5/22/25

CHARLES LAWRENCE BAUGH, SR.
DEFENDANT